UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:07-cv-239-KSF

**ORVIL NELSON & COMPANY, INC., et al.**                              **PLAINTIFFS**

vs.                              **OPINION AND ORDER**

**ALL AMERICAN HOMES OF TENNESSEE, et al.**                              **DEFENDANTS**

\* \* \* \* \* \* \* \*

This matter is before the Court on the Motion of Defendant Floyd Van Cook ("Cook") to dismiss Plaintiffs' claims against him for failure to state a claim [DE 14]. The matter having been fully briefed, it is ripe for decision.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Most of the background facts for this case are set forth in this Court's Opinion and Order entered April 3, 2008 [DE 26] compelling arbitration with other Defendants. Plaintiffs Orvil Nelson & Co., Inc. and Orvil Nelson, its sole shareholder, are referenced collectively as "ONC" and are in the business of constructing single family homes [Amended Complaint ¶ 8]. Plaintiffs Dzurilla claim to own an "All American Home," but did not have any contract with any Defendant [DE 16, p. 3]. Their home was constructed in Clark County, Kentucky, in 2004 [Amended Complaint ¶ 9]. In 2004, ONC had an exclusive contract to install All American Homes in Clark County [DE 11, Ex. A]. Defendants All American Homes of Tennessee ("AAH TN"); All American Homes of Indiana, LLC ("AAH IN"); All American Homes, LLC; and Coachman Industries are referenced collectively as "AAH." Plaintiffs allege that Cook, Executive Director of the Kentucky Office of Housing, Buildings and Construction ("OHBC"), violated their civil rights under 42 U.S.C. § 1983 by ignoring violations of the Kentucky Building Code by AAH who manufactured industrialized building system

components destined for Kentucky. [Amended Complaint ¶¶ 60-65]. Plaintiffs claim violations of their substantive due process and equal protection rights under the Fourteenth Amendment. *Id.* Plaintiffs voluntarily dismissed the OHBC and its Director of Plumbing, Tim House, as defendants in this action [DE 25, 27].

In addition to presuming the truth of Plaintiffs' allegations, several uncontradicted facts have been revealed in the motions and responses in this case, leading to the following chronology:

| | |
|---|---|
| March 1, 2004 | ONC and AAH TN execute a Sales Agreement for Clark County, Kentucky [DE 11, Ex. A]. |
| July 27, 2004 | ONC was invoiced for the AAH TN building components [DE 16, Ex. C]. The invoice reflects the components were manufactured March 23, 2001 [*id.*] and may have originally been destined for Tennessee [DE 16, Ex. B]. |
| July 27, 2004 | AAH TN certified to the OHBC that the shipped units complied with the Kentucky Building Code [DE 14, Ex. A]. |
| July or August 2004 | Plaintiffs' expert, James Skees, P.E. reports that AAH set the ONC modular structures on the foundations in late July and early August, 2004. [DE #16, Ex. E1, p. 3] |
| August 2004 - August 2006 | Nelson pleaded for two years for AAH to make warranty repairs on the dwellings [Amended Complaint ¶ 69]. |
| Summer 2006 | ONC alleges it discovered the units were constructed under the Tennessee building code for placement in Tennessee [*Id.* at ¶ 67]. |
| | Nelson contacted Tim House at OHBC for assistance [*Id.* at ¶ 68]. House contacted AAH IN and allegedly reported to Nelson that AAH would reimburse Nelson for repairs [*Id.* at ¶ 69]. Nelson stated he "was reluctant to do this since he had been 'bitten' many times by AAH." [Plaintiffs' Response, DE 19 ¶ 1]. |
| | Nelson contacted an AAH salesperson to discuss if AAH would make the repairs [Amended Complaint ¶ 75]. AAH sent a repair crew from Indiana, but an OHBC plumbing inspector would not let them make the repairs as they did not have a plumbing permit or a Kentucky Certified Master Plumber [*Id.* at ¶¶ 76-77]. |
| | AAH representatives persuaded Nelson to have the repairs made locally and Nelson would be reimbursed [*Id.* at ¶78]. In reliance on that statement, Nelson undertook $10,000 of repairs, but AAH has never paid Nelson [*Id.* at ¶79-80]. |
| October 4, 2006 | ONC signed a sales agreement with AAH IN. [DE 11, Ex. B]. |

2

June 21, 2007   Plaintiffs filed suit against AAH, OHBC, Tim House and Cook seeking damages for the repairs to the homes and related damages.

Plaintiffs specifically alleged the following against Defendant Cook: OHBC has exclusive responsibility for inspection and approval of industrialized building system components used in Kentucky by AAH [Amended Complaint ¶61]. The Kentucky Building Code applies equally to single-family dwellings constructed in Kentucky as well as those constructed elsewhere as industrialized building systems and brought into Kentucky [*Id.* ¶ 62].

> 63. Defendant Cook acted under color of state law, knew or had the means to know of the systematic code violations contained in the AAH industrialized building system components destined for Kentucky, ignored these violations and failed to take any action as required by the Kentucky law to protect the Plaintiffs' constitutional and statutory guarantee of life, safety and health of the occupant-owners of said dwellings.
>
> 64. Defendant Cook violated the Plaintiffs' clear and well-established Constitutional right to receive the same protection afforded the law for the construction of their industrialized building system by AAH homes as those constructed inside this Commonwealth, such as [compliance with the Building Code] just as is specifically and aggressively enforced for all construction of non-industrialized building system single-family dwellings constructed within Kentucky.
>
> 65. Defendant Cook acted under color of state law by their above conduct in implementing policies for the Kentucky Office of Housing, Buildings and Construction related to the inspection and approval of single-family dwellings constructed as industrialized building systems that denied the Plaintiffs' right to Equal Protection of law and denied the Plaintiffs' rights specifically protected by the Constitutional guarantee of substantive due process, all in violation of 42 USC 1983.

*Id.* at ¶¶ 63-65. There are no other claims in the Amended Complaint relating to Cook.

In response to Defendant Cook's motion to dismiss, Plaintiffs reiterate their claims: Cook "had actual knowledge of alleged illegal activities within the Kentucky Office of Housing, Buildings and Construction by allowing the violation of many state laws that govern the construction of ... modular homes." [DE 18, p. 1]. "In short, he sanctioned the continuous violation of Kentucky law by absolutely refusing to take any action to enforce it." *Id.* at 1-2. Specifically, Plaintiffs complain that Cook "unilaterally allow[ed] manufacturers of modular homes to continuously violate the Kentucky Uniform State Building Code." *Id.* at 2. Plaintiffs complain that continuous violations of

3

the State Building Code by modular home manufacturers were allowed by Cook and OHBC, "while holding those such as Orvil Nelson subject to a much higher standard," which denied Nelson "equal protection under the law." *Id.* at 4. Finally, they claim that by "denying Nelson his fundamental right to have his problems addressed by the OHBC and the Kentucky Board of Housing, Cook has denied Nelson substantive due process." *Id.* at 4-5.

## II.   ANALYSIS

### A.   Standard

The standard for ruling on a motion to dismiss is that a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. On a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation. Factual allegations must be enough to raise a right to relief above the speculative level.

*Id.* at 1964-65 (citations omitted).

### B.   Section 1983 Claims

Plaintiffs' Amended Complaint in the present case fails on several grounds to state a claim against Defendant Cook. First, Plaintiffs' claims are for violations of state, not federal law. The only authority they cite in support of their claims are three Kentucky cases regarding immunity of state officers who exceeded their authority under state law, *Carr v. Wright*, 423 S.W.2d 521, 522 (Ky. 1968); *Upchurch v. Clinton County*, 330 S.W.2d 428, 431 (Ky. 1959); and *Franklin County v. Malone*, 957 S.W.2d 195, 202 (Ky. 1997). [DE 18, p. 4]. Those authorities have no bearing on a federal claim under § 1983.

> Section 1983 authorizes the courts to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" that occur under color of state law. The statute is thus limited to deprivations of *federal* statutory and

4

constitutional rights. It does not cover official conduct that allegedly violates *state* law.

*Huron Valley Hospital, Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989). *See also Michael v. Ghee*, 498 F.3d 372, 375 (6th Cir. 2007). Plaintiffs' allegations that Defendant Cook failed to enforce state law requiring AAH to comply with the Kentucky Building Code is a state law claim that will not support a § 1983 action.

### C. Substantive Due Process

Plaintiffs attempt to make their claim a federal claim by alleging a denial of equal protection and a denial of substantive due process. "To establish a prima facie case under 42 U.S.C. § 1983, a plaintiff must prove the following two elements: (1) the defendant must be acting under the color of state law, and (2) the offending conduct must deprive the plaintiff of rights secured by federal law." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). Regarding the first element, Plaintiffs allege Cook was acting in his capacity as Executive Director of OHBC. Assuming this allegation is true, Plaintiffs have met the first element of a prima facie case. The second element presents much greater difficulty for them.

"The doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992). "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' meaning those rights that are 'implicit in the concept of ordered liberty.'" *Young v. Township of Green Oak,* 471 F.3d 674, 684 (6th Cir. 2006). *See also Bowers v. City of Flint*, 325 F.3d 758, 763-64 (6th Cir. 2003) ("Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental"). The list of fundamental rights and liberty interests "is short, and the Supreme Court has expressed very little interest in expanding it." *Seal v. Morgan*, 229 F.3d 567, 575 (6th Cir. 2000).

5

Nelson claims that he was denied "his fundamental right to have his problems addressed by the OHBC and the Kentucky Board of Housing" by Cook. Merely labeling a right as fundamental does not make it so. Nelson does not provide any authority to support his claim that citizens have a "fundamental" right to have their problems addressed by a particular state agency. *See Elia v. Gonzales*, 431 F.3d 268, 275 (6th Cir. 2005) ("No authority supports Elia's contention that a speedy deportation hearing constitutes a fundamental right implicating substantive due process."). Moreover, "[a]reas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.'" *Young*, 471 F.3d at 684 (quoting *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994). "[A] federal court will not require a state to follow its own law." *Bowers*, 325 F.3d at 767 (quoting *Carson v. Block*, 790 F.2d 562, 565 (6th Cir. 1986). Thus, Nelson's claim that Cook did not enforce the Kentucky Building Code against AAH fails to state a substantive due process claim..

Even if Plaintiffs had identified a deprivation of some fundamental right, their claim would still fail. The Sixth Circuit recognizes that substantive due process encompasses the right to be free from arbitrary and capricious action by government actors. *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003). "[T]he substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quoting *Collins v. Harker Heights,* 503 U.S. 115, 128 (1992)). "Only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at 834. The Sixth Circuit is reluctant to apply the "shock the conscience" standard outside the context of physical abuse. *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992); *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1478 (6th Cir. 1993); *Wedgewood Limited Partnership I v. Township of Liberty*, 456 F. Supp. 2d 904, 933-34 n. 35 (S.D. Ohio 2006).

Plaintiffs here have not claimed any physical abuse. Accordingly, Plaintiffs cannot demonstrate "conscience shocking" conduct. Their complaint must be dismissed.

Additionally, Plaintiffs simply argue that Cook exceeded his authority by refusing to preclude AAH from shipping its modules into Kentucky [DE 18, p. 2]. There is no factual support, however, for Plaintiffs' conclusory allegations that Cook "knew or had the means to know of the systematic code violations contained in the ... components destined for Kentucky, ignored these violations and failed to take any action as required by Kentucky law." [Amended Complaint ¶ 63]. To the contrary, Plaintiffs affirmatively allege:

> Each time Defendants AAH constructed a dwelling destined for Kentucky, it would write the Kentucky Office of Housing, Buildings and Construction and misrepresent that it had constructed the single-family dwelling in accordance with the Uniform State Building Code, that it had been properly inspected and approved by T.R. Arnold for compliance with the Kentucky Uniform State Building Code and that it contained no code violations.

Amended Complaint ¶ 49. Plaintiffs allege that the Office of Housing, Buildings and Construction "reli[ed] on this written declaration of code compliance." *Id.* at ¶ 50. Plaintiffs allege that this certification "was untrue" [*id.* at ¶ 51], but do not allege a single fact to show that Cook knew or should have known that the certifications were not true. No affidavit or other evidence is provided to support such a claim. In response to a motion to dismiss, "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bishop v. Lucent Technologies, Inc.*, ___ F.3d ___, 2008 WL 822265 at *2 (6th Cir. March 25, 2008) (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. Accordingly, Plaintiffs' complaint must be dismissed on this ground as well.

### D. Equal Protection Claim

Plaintiffs' equal protection claim fares no better. "The Equal Protection Clause prohibits states from making distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the

7

difference." *Wilson v. Morgan*, 477 F.3d 326, 333 (6th Cir. 2007) (internal quotation marks omitted). Nelson's claim here is that he, as an in-state builder of single family homes, is required to comply with the Kentucky Building Code whereas AAH, as an out-of-state manufacturer of industrialized building system components, allegedly was not so restricted. As in *Wilson*, Plaintiffs cannot make out an equal protection claim. The absence of any fundamental right is demonstrated above. Plaintiffs do not allege that they are members of a protected class nor that they are treated differently from someone similarly situated. Certainly, they are not similarly situated to AAH. Plaintiffs are not manufacturers of building system components, and they are not subject to a different building code. The record shows that OHBC treated Plaintiffs and AAH consistently by requiring both to comply with the Kentucky Building Code. The fact that AAH lied to the agency about its compliance with the Building Code does not give rise to an equal protection claim. Plaintiffs have not provided any facts to support their conclusory allegations that OHBC knew these certifications were false when made but, nonetheless, allowed the components to be delivered in Kentucky.

Even if Plaintiffs' conclusory allegations are assumed to be true, Plaintiffs have failed to demonstrate that OHBC purposefully discriminated against them. "Unequal application of a state law fair on its face is not a denial of equal protection unless there is shown to be present an element of intentional or purposeful discrimination." *Delia v. Court of Common Pleas of Cuyahoga County*, 418 F.2d 205, 206 (6th Cir. 1969). Accordingly, this claim must be dismissed.

      **E.**     **Statute of Limitations**

Finally, it appears from the Amended Complaint and the evidence introduced by Plaintiffs that their claims are barred by the statute of limitations. Because 42 U.S.C. § 1983 does not contain its own statute of limitations, the limitation period is borrowed from the applicable state law. Plaintiffs' claims here are governed by Kentucky's one-year limitation period in K.R.S. § 413.140(1). *Collard v. Kentucky Bd of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) ("[W]e conclude that section

1983 actions in Kentucky are limited by the one-year statute of limitations found in section 413.140(1)(a)."). The statute of limitations begins to run on the date when a plaintiff knew, or should have known, of the injury that forms the basis of the action. *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005).

The record in the present case reveals that Plaintiffs' homes were delivered to Kentucky in 2004. AAH's invoice to Nelson on July 24, 2004 reflects that the components of one home were manufactured in Tennessee in March 2001 [DE 16, Ex. C]. Nelson's expert, Tracy Puckett, states that "the faceplate attached to the two-story dwelling [shows] it was manufactured in Tennessee March 21, 2001 using the 1999 National Electric Code, the Tennessee Code Annotated Title 68 Ch. 18 & 68 and the NFPA 1-1982 ANSI AS8-1982." [DE 18, Affidavit of Tracy Puckett, p. 1]. ONC is in the business of constructing single-family dwellings in Kentucky [Amended Complaint ¶ 8] and is familiar with the requirements of the Kentucky Uniform State Building Code in effect since 1978 [*id.* at ¶¶ 17-19]. ONC is required to comply with that Code [DE 18, p. 4]. Plaintiffs' Property Damage Product Liability report by James A. Skees, P.E., states that Nelson reported AAH "set the modular structures on the foundations in late July and early August, 2004." [DE #16, Ex. E1, p. 3]. ONC alleges it has been unable to "obtain a Certificate of Occupancy because [its two homes] contain many flagrant violations of the Kentucky Uniform State Building Code." [Amended Complaint at ¶ 66]. Nelson says that local state inspectors refused to approve the modular cubes delivered to him because they "were so defective and laden with violations of the Kentucky Uniform State Building Code that the in-state inspectors would not allow Nelson to connect them to the utilities." [DE 18, p. 3]. Nelson alleges he "had pleaded for two years for AAH to make warranty repairs on the dwellings" and decided to make them himself in 2006 [Amended Complaint at ¶¶ 69-70].

It is clear from these facts that ONC and Nelson knew shortly after the modular units were delivered in 2004 that they were "defective and laden with violations of the Kentucky Uniform State

Building Code." The homes could never be connected to utilities or issued a Certificate of Occupancy because of these violations. Thus, ONC knew, or should have known, of the injury that forms the basis of its action, AAH's failure to comply with the Kentucky Building Code, in July or August 2004. Unquestionably, Plaintiffs knew of AAH's failure to comply with the Kentucky Building before June 2006, more than one year before they filed their § 1983 action in June 2007 [DE 1]. Accordingly, this claim is barred by the statute of limitations. *See Bishop v. Lucent Technologies, Inc.*, ___ F.3d ___, 2008 WL 822265 (6th Cir. 2008).

Nelson's allegation that he did not discover until the summer of 2006 "that the two dwellings were constructed under the Tennessee construction codes for Tennessee builders" does not salvage his claim from the limitations bar. The injury alleged is that the buildings fail to comply with the Kentucky Building Code and Cook failed to require that compliance. The code the buildings *did* comply with is not relevant to this claim.

### F. Qualified Immunity

In light of the Court's rulings, it is not necessary to consider Defendant Cook's claim of qualified immunity.

### III. CONCLUSION

The Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS** that Cook's motion to dismiss [DE 14] is **GRANTED** and he is hereby **DISMISSED** as a party to this action. A Judgment consistent with this Opinion shall be entered contemporaneously herein.

This April 11, 2008.



Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**